1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9
10
11
12
13
14
15
16
17
18
19

| | |
|---|---|
| ADRIANA MONTES, | Case No.  1:24-cv-01485-SAB |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION |
| v. | |
| CAPSTONE LOGISTICS, LLC, et al., | ORDER DIRECTING THE CLERK OF THE COURT TO RANDOMLY ASSIGN THIS MATTER TO A DISTRICT JUDGE |
| Defendants. | (ECF No.  21) |
| | **OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

20
21
22
23
24

Currently before the Court is Capstone Logistics, LLC and WINCO Foods Inc.'s (collectively, "Defendants") motion to compel Plaintiff Adriana Montes ("Plaintiff") to pursue her individual claims in arbitration. Defendants also request that the Court dismiss Plaintiff's putative class claims and stay the representative PAGA claims pending completion of the arbitration of Plaintiff's individual PAGA claims.

25
26
27
28

Following amendment of the Local Rules effective March 1, 2022, a certain percentage of civil cases shall be directly assigned to a Magistrate Judge only, with consent or declination of consent forms due within 90 days from the date of filing of the action.  L.R. App. A(m)(1).  This action has been directly assigned to a Magistrate Judge only. Not all parties have filed consent or

declination of consent forms in this action.  Thus, pursuant to 28 U.S.C. § 636(b)(1)(B), Local Rule 302(c)(7), and Local Rule Appendix A, subsection (m), the Court shall direct the Clerk of the Court to assign a District Judge to this action and the Court shall issue these findings and recommendations as to the pending motion to compel arbitration.

The Court finds the matter suitable for decision without oral argument pursuant to Local Rule 230(g).  Having considered the moving, opposition, and reply papers, and the Court's record, the Court recommends that Defendants' motion to compel arbitration be granted.

**I.**

**BACKGROUND**

**A.    Allegations and Procedural History**

 Plaintiff worked for Capstone Logistics, LLC ("Capstone") from June 10, 2023 to September 29, 2023, and was rehired on November 13, 2023 until she was terminated on August 29, 2024.  (Decl. of Adriana Montes ("Montes Decl.") ¶ 4, ECF No. 26-2.)[1]  Plaintiff was a clerk at Capstone's warehouse. (ECF No. 26-1 at 42.)  In connection with her employment, Plaintiff electronically signed an arbitration agreement.  (Montes Decl. ¶ 7; see ECF No. 21-1 at 7-10.)

On October 7, 2024, Plaintiff filed a putative class action complaint in the Merced County Superior Court alleging various wage and hour violations. (ECF No. 1-1.) Defendants removed the action to this Court on December 5, 2024.  (ECF No. 1.)  On January 13, 2025, Plaintiff filed the operative first amended complaint, which brings the following claims against Defendants: (1) failure to pay all wages; (2) meal period violations; (3) rest period violations; (4) recovery period violations; (5) failure to produce wage statements (payroll records); (6) failure to provide personnel records; (7) failure to produce signed records; (8) failure to implement heat prevention measures and maintain legal temperature controls; (9) failure to provide accurate itemized wage statements; (10) waiting time penalties; (11) failure to reimburse for business expenses, (12) violations of California Labor Code section 2100 et. seq.; (13) violation of California Business and Professions Code section 17200; and (14) enforcement of the Private

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

1  Attorneys General Act of 2004.  (Id.)

2      On February 10, 2025, Defendant Capstone filed a motion to compel arbitration, dismiss

3  claims, and stay the representative PAGA claims.  (ECF No. 21.)  The same day, Defendant

4  WINCO filed a joinder to Capstone's motion.  (ECF No. 22.)  On March 5, 2025, Plaintiff filed

5  an untimely opposition to Defendants' motion.[2]  (ECF No. 26.)  Defendant Capstone filed a reply

6  on March 17, 2025.  (ECF No. 31.)

7      **B.**      **The Arbitration Agreement**

8      The Arbitration Agreement – Warehouse Employee ("Agreement") provides, in pertinent

9  part, that "any claim, controversy, or dispute between the Parties, or arising out of or relating to

10 the relationship between the Parties (including any request for preliminary or other injunctive

11 relief), whether arising before or after this Arbitration Agreement is signed…must be submitted

12 to final and binding confidential arbitration to be administered by the American Arbitration

13 Association ("AAA")."  (Declaration of Scott Dickinson (Dickinson Decl.), ECF No. 21-1 at 7

14 (emphasis in original).)   The Agreement provides a non-exhaustive list of claims subject to

15 arbitration, including  claims "arising out of or relating to any acts, omissions, conditions, or

16 events taking place during the term of" the Agreement and "any cause of action arising under the

17 statutes, regulations, or common law of any governmental authority."  (Id.)  The Agreement also

18 lists claims not covered, which includes claims brought under PAGA.  (Id.)

19     The Agreement also includes the following choice of law provision: "The Parties agree

20 this Arbitration Agreement is governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.)

21 ("FAA") and is not exempt from the FAA. If the FAA is held not to apply, this Arbitration

22 Agreement will be governed by the arbitration laws of the State of Georgia (Ga. Code Ann. § 9-

---

23 [2] Plaintiff's opposition can be described, at best, as unpolished. Plaintiff quotes hallucinated provisions from the
24 Agreement (ECF No. 26 at 28, 30); cites to paragraphs in her declaration that either do not exist (ECF No. 26 at 23
   (referring to paragraphs 20-25 in Plaintiff's 19 paragraph declaration)) or do not support the corresponding argument
25 made in her opposition (see, e.g., id. at 12 (citing paragraph 16 of Plaintiff's declaration)); she argues clearly
   incorrect factual contentions (compare ECF No. 26 at 29 (arguing Plaintiff was employed by Defendant from
26 February 2005 to May 2, 2023), with Montes Decl. ¶ 4 (stating she worked for Capstone from 2023 to 2024); and
   consistently argues that the amended arbitration agreement sent by Capstone and signed by Plaintiff three months
27 after she began working was a document provided during Plaintiff's November 2023 "onboarding process" (see,
   e.g., ECF No. 26 at 13, 16).  Plaintiff's opposition required burdensome efforts from the Court to confirm accurate
28 facts and relevant arguments. Should this action proceed beyond these findings and recommendations, Plaintiff shall
   use more care in preparing future filings.

9-1 et seq.).”  (ECF No. 21-7 at 7.)

The Agreement cautions the employee that “**BY AGREEING TO ARBITRATION, THE PARTIES UNDERSTAND THEY ARE WAIVING THEIR RIGHT TO A JURY TRIAL**.”  (ECF No. 21-1 at 7 (emphasis in original).)  The Agreement includes a revocation provision and confirms that no adverse consequences would be taken if the employee exercises her right to revoke assent within a specified timeframe.  (Id. at 9.) The Agreement also contains a delegation provision and a class waiver provision.  (Id. at 8.)

The Agreement contains Plaintiff’s initials, electronic signature, name, job title, and the date of execution, January 11, 2024.  (ECF No. 21-7 at 10.)

## II.

## LEGAL STANDARD

The district court’s role under the Federal Arbitration Act (“FAA”) in deciding whether a dispute is arbitrable is generally “limited to determining (1) whether a valid agreement to arbitrate exists; and if it does (2) whether the agreement encompasses the dispute at issue.” Chiron Corp. v. Ortho Diagnostic Sys., 207 F.3d 1126, 1130 (9th Cir. 2000).  “If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms.”  Id.  “Although there is generally a presumption in favor of arbitration, ‘the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made.’ ” Winkler v. McCloskey, 83 F.4th 720, 728-29 (9th Cir. 2023) (quoting Johnson v. Walmart Inc., 57 F.4th 677, 680-81 (9th Cir. 2023)).

In resolving a motion to compel arbitration, the district court must apply the summary judgment standard outlined in Rule 56 of the Federal Rules of Civil Procedure.  Hansen v. LMB Mortg. Servs., Inc., 1 F.4th 667, 670 (9th Cir. 2021).  The moving party bears “the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence.” Norcia v. Samsung Telecomms. Am., LLC, 845 F.3d 1279, 1283 (9th Cir. 2017) (quotations and citations omitted). The party opposing arbitration bears the burden of proving any defense. Lim v. TForce Logistics, 8 F.4th 992, 999 (9th Cir. 2021).

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# III.

## DISCUSSION

In moving to compel arbitration of Plaintiff's individual claims, Defendants argue that the parties executed an enforceable arbitration agreement that delegates arbitrability to the arbitrator.  Plaintiff argues that the arbitration agreement is unenforceable due to fraud in the execution of the Agreement.  Even an agreement to arbitrate exists, Plaintiff avers the Agreement cannot be governed by the FAA because she qualifies for the FAA's transportation worker exemption and the Agreement is unconscionable.  Plaintiff does not dispute that the Agreement, if enforceable, includes a delegation clause and class waiver.  For the following reasons, the Court recommends granting Defendants' motion to compel arbitration.

### A.    Evidentiary Objections

1.    <u>Plaintiff's Evidentiary Objections</u>

Plaintiff objects to certain portions of Capstone's Senior Human Resources Information Systems ("HRIS") Manager Scott Dickinson's declaration on the grounds that he "lacks personal knowledge and misstates the record."  (ECF No. 26-4 at 2-4.)

First, Plaintiff objects to the Mr. Dickinson's statement that "Plaintiff could access the Arbitration Agreement at any time and could review, download, and/or print the document at her leisure." (Dickinson Decl. ¶ 7.)  Plaintiff argues Mr. Dickinson lacks personal knowledge as to whether Plaintiff could download and print the document; in fact, Plaintiff denies having access to a printer or the ability to download the document. (ECF No. 26-4 at 2.) However, Mr. Dickinson is not testifying based upon any knowledge of Plaintiff's personal access to a printer or her practical knowledge of Adobe.  Rather, Mr. Dickinson is testifying based upon his experience as a Senior HRIS Manager.  In that position, Mr. Dickinson states he oversees both the electronic systems onboarding process and the electronic roll-out of new Capstone policies (Dickinson Decl. ¶ 2) and is familiar with and has access to electronic records, including employee personnel records (<u>id.</u> at ¶ 3).  The Court finds Mr. Dickinson has established he has personal knowledge that the electronic system through which Plaintiff was provided the Agreement *allowed* Plaintiff to electronically access the Agreement through a link she *could* use

1    to review, download, and/or print the document.  Plaintiff's objections are therefore overruled.

2    Plaintiff also objects to Mr. Dickinson's statement that "[t]he Arbitration Agreement was

3    available to Plaintiff in both English and Spanish" on the same grounds. (Dickinson Decl. ¶ 8.)

4    Plaintiff improperly proffers that she denies that the Agreement was available in Spanish.[3] (ECF

5    No. 26-4 at 3.)  The Court finds Mr. Dickinson has sufficiently established that as the Senior

6    HRIS manager with familiarity of and access to electronic records, he is competent to testify that

7    the Agreement was available in Spanish.  Thus, Plaintiff's objections are overruled.

8    Plaintiff objects to Mr. Dickinson's statement that the Agreement "was not mandatory,

9    and Plaintiff could have decided not to sign the Arbitration Agreement. Plaintiff also could have

10   revoked her signature per the Arbitration Agreement" as lacking in personal knowledge and

11   misstating the record.  (Dickinson Decl. ¶ 9.)  Given Mr. Dickinson's position as HRIS manager

12   with familiarity of and access to electronic records, the Court finds Mr. Dickinson has

13   sufficiently established his personal knowledge regarding the content of the Agreement.  That

14   Plaintiff was never personally informed of the revocation provision or significance of the

15   Agreement does not negate Mr. Dickinson's personal knowledge of the document.  Accordingly,

16   Plaintiff's objections are overruled.

17          2.    Defendant's Evidentiary Objections

18   Defendant objects to a portion of Plaintiff's counsel's declaration that states: "As part of

19   Plaintiff's hiring process, Plaintiff was required by Defendant to sign various documents,

20   including a 'Confidentiality and Non-Solicitation Policy Acknowledgment' (hereinafter referred

21   to as the 'Confidentiality Agreement')."  (Declaration of Jose R. Garay, ECF No. 26-1 at 5, ¶

22   10.)  A copy of the Confidentiality Agreement is attached to the declaration, identified within

23   Mr. Garay's declaration as "Bates CAPSTONE 000042–000046."  (Id.)  "[A]n attorney's

24   declaration must be made upon personal knowledge." Clark v. Cnty. of Tulare, 755 F. Supp. 2d

25   1075, 1084 (E.D. Cal. 2010).  Counsel for Plaintiff fails to establish his personal knowledge of

26

27   [3] As discussed further herein, Plaintiff provides evidence in support of her opposition that *contradicts* this statement,
     which is notably omitted from Plaintiff's own declaration. While Plaintiff here "denies the Arbitration Agreement
     was available in Spanish," she attaches her personnel file showing a Spanish version of the Agreement was sent to
28   her via email. (ECF No. 26-1 at 44.)  Plaintiff also provides the Spanish version of the Agreement.  (Id. at 49-53.)

1   any requirement that Plaintiff sign documents during her hiring process with Defendants. The
2   Court further notes that Plaintiff states in her declaration she did *not* sign the Confidentiality
3   Agreement located on pages "CAPSTONE 000043 to CAPSTONE 000046." (ECF No. 26-2 at
4   ¶ 13.) The Court sustains Defendants' objection to this portion of Plaintiff's counsel's
5   declaration as lacking personal knowledge.

6          Defendant objects to a portion of Plaintiff's declaration that states she was informed by
7   Capstone in her interview that her ability to only speak Spanish was not an issue because her
8   supervisor would communicate with her in Spanish. (Montes Decl. ¶ 2.) Defendants raise
9   "garden variety objections" of hearsay and relevancy. See Torres v. Los Angeles Sheriff's Dept.,
10  Case No. CV 22-07450-MWF (MARx), 2024 WL 4720808, at *5 (C.D. Cal. Aug. 14, 2024). In
11  ruling on a motion to compel, district courts apply the summary judgment standard of Rule 56.
12  Hansen, 1 F.4th at 670. When evaluating a motion for summary judgment for a genuine dispute
13  of material fact, a court "cannot rely on irrelevant facts, and thus relevance objections are
14  redundant." Burch v. Regents of the Univ. of Cal., 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006).
15  Nor do courts focus on the admissibility of the evidence's form at the summary judgment stage;
16  rather, the focus is on the admissibility of its contents. Sandoval v. Cnty. of San Diego, 985 F.3d
17  657, 666 (9th Cir. 2021). In other words, "[i]f the contents of a document can be presented in a
18  form that would be admissible at trial—for example, through live testimony by the author of the
19  document—the mere fact that the document itself might be excludable hearsay provides no basis
20  for refusing to consider it on summary judgment." Id.. Even if this particular statement itself is
21  not admissible through Plaintiff's testimony, it is possible that Plaintiff could offer the statement
22  in an admissible form at trial. Accordingly, Defendants' objections are overruled.

23         Defendants also partially object to paragraph five in Plaintiff's declaration that states she
24  "worked at the Warehouse for Defendants, in which I as [*sic*] involved in the receiving and
25  shipping of Capstone's goods and products, through interstate streams of commerce and across
26  state lines…." (Montes Decl. ¶ 5.) Defendants do not object the remainder of the paragraph,
27  which continues by stating "as I understood based on the labels and marking on boxes and other
28  locations. I was also informed that the products and goods crossed California states [*sic*] lines."

(Id.)  Defendant first objects on the basis the statement is conclusory and vague as to Plaintiff's alleged "involvement" in "shipping and receiving."  (ECF No. 31-5 at 3.)  The Court, however, focuses on the admissibility of the relevant facts—if any could be gleaned from such statement— not the form presented.  See Sandoval, 985 F.3d at 666.  Defendants also argue that Plaintiff lacks personal knowledge regarding the origin or destination of the goods or products, and whether they crossed state lines.  (Id.)  However, the omitted portion of Plaintiff's declaration— that she observed the origins and destinations of the goods and products based upon her personal understanding of the labels and markings on the boxes—evinces sufficient personal knowledge based upon direct observations.  However, to the extent paragraph five references "through interstate streams of commerce," Defendants' objection is sustained. Such statement is not based upon direct observations and Plaintiff fails to demonstrate personal knowledge of goods and products being received and shipped "through interstate streams of commerce."  See Uwaoma v. OTS Sols., LLC, No. EDCV 24-1902-KK-SPX, 2025 WL 1017505, at *2 (C.D. Cal. Mar. 7, 2025) (sustaining a Rule 602 objection where the plaintiff's declaration included references to "directly supporting the continuous flow of interstate commerce"); Fomby v. CSC ServiceWorks, Inc., No. 23-CV-05317-DMR, 2024 WL 3580824, at *4-5 (N.D. Cal. July 29, 2024) (finding statements in a declaration that the plaintiff was "engaged in interstate commerce" and that plaintiff's job "is critical to the completion of the interstate commercial process" were conclusory and improper legal opinions). The Court does not find such evidence could be produced in a proper form at trial because such statement functions as a legal conclusion that improperly instructs the fact-finder how to decide a critical issue.  See Pierre v. IEC Corp., No. 8:22-cv-01280 FWS JDE, 2023 WL 3551962, at *4 (C.D. Cal. Mar. 14, 2023). Accordingly, Defendant's objection to the statement that Plaintiff was involved in the receiving and shipping of goods and products specifically "through interstate streams of commerce" is sustained.  Defendant's objections as to the remainder of paragraph five are overruled.

Finally, Defendants object to statements in Plaintiff's declaration that relate to (1) documents required to complete employment related contracts; (2) Plaintiff's belief a term of the Agreement is unconscionable; and (3) Plaintiff's opinion of her former supervisor.  (ECF No. 31-

1    5 at 4 (citing Montes Decl. ¶¶ 3, 16, 19).)  The Court does not rely on these statements to reach

2    its findings and recommendations and therefore denies Defendants' objections as moot.

3          **B.      Validity of the Arbitration Agreement**

4          "Parties are not required to arbitrate their disagreements unless they have agreed to do

5    so." <u>Davis v. Nordstrom, Inc.</u>, 755 F.3d 1089, 1092 (9th Cir. 2014) (citation omitted.)  As the

6    party seeking to compel arbitration, Defendant bears the burden of proving by a preponderance

7    of the evidence that an agreement to arbitrate exists.  <u>Norcia</u>, 845 F.3d at 1283.  If Defendant

8    carries its burden, Plaintiff, as the opposing party, bears the burden of proving any defense.  <u>Lim</u>,

9    8 F.4th at 999.  Akin to summary judgment, the Court weighs the declarations, documentary

10   evidence, and any oral testimony to reach its final determination regarding the whether an

11   arbitration agreement exists and if any defense renders it unenforceable. <u>Castillo v. CleanNet</u>

12   <u>USA, Inc.</u>, 358 F. Supp. 3d 912, 928 (N.D. Cal. 2018) (citing <u>Rosenthal v. Great W. Fin. Sec.</u>

13   <u>Corp.</u>, 14 Cal. 4th 394, 413 (1996)).

14         Defendants present the Agreement that Plaintiff initialed and electronically signed on

15   January 11, 2024.  (ECF No. 21-1 at 7-10); <u>see</u> <u>Shanley v. Tracy Logistics LLC</u>, No. 2:24-CV-

16   01011-DC-JDP, 2025 WL 19012, at *4 (E.D. Cal. Jan. 2, 2025) ("With respect to the moving

17   party's burden to provide evidence of the existence of an agreement to arbitrate, it is generally

18   sufficient for that party to present a copy of the contract to the court") (quotations and citations

19   omitted). Capstone also presents company records that show it sent the Agreement via Adobe e-

20   sign to the email associated with Plaintiff on January 9, 2024.  (<u>Id.</u> at 5.)  The records show the

21   email was viewed by the email associated with Plaintiff on January 10, 2024 at 4:28 a.m.  (<u>Id.</u>)

22   Then, on January 11, 2024 at 9:09 p.m., the email associated with Plaintiff e-signed the

23   document as "Adriana M Montes."  (<u>Id.</u>)  Defendant's Senior HRIS manager, Mr. Dickinson,

24   provides that Plaintiff could access the Agreement at any time and could review, download,

25   and/or print it at her leisure.  (Dickinson Decl. ¶ 7.)  Mr. Dickinson also declares the Agreement

26   was available to Plaintiff in both English and Spanish.  (<u>Id.</u> at ¶ 8.)

27

28

Plaintiff confirms she signed the Agreement.[4]  (Montes Decl. ¶ 7.)  However, Plaintiff raises the defense of fraud in execution.  (See ECF No. 26 at 20-21.)  Fraud in the execution of an agreement occurs when "the promisor is deceived as to the nature of his act, and actually does not know what he is signing, or does not intend to enter into a contract at all."  Rosenthal, 14 Cal. 4th at 415 (quotations and citation omitted).  In that case, "mutual assent is lacking, and [the contract] is *void*." Id. (Emphasis and brackets in original).  To succeed, Plaintiff must show "(1) misrepresentation (including by omission) and (2) reasonable reliance on that misrepresentation." Castillo, 358 F. Supp. 3d at 930 (quoting Rosenthal, 14 Cal. 4th at 419-20).

Plaintiff argues that Defendant was aware she only communicated in Spanish and could not read English when they "forced" her signature on the English version of the Agreement "by misrepresentation of the nature of the documents she signed." (ECF No. 26 at 12, 18.)  Plaintiff contends Defendant's supervisors and agents communicated regularly with her in Spanish, but no one informed her in Spanish what the Agreement was or meant.  (Id. at 13; Montes Decl. ¶¶ 2-3, 7.) Although her supervisors "could have explained" the contents of the Agreement to Plaintiff in Spanish, Plaintiff avers they did not because they "knew that doing so would result in [Plaintiff] rejecting arbitration." (ECF No. 26 at 13.) Plaintiff declares that supervisors and representatives of Capstone "instructed [her] to sign certain documents in English, including the arbitration agreement, stating that these documents were necessary for [her] employment and continued work at Capstone Logistics."  (Montes Decl. ¶ 7.) As a result, Plaintiff signed the Agreement in English, but did not understand or know what she signed.  (Id.)

Plaintiff does not "believe" she had access to Agreement "other than the link to sign" because she "did not know how to use Adobe other than to click links." (Montes Decl. ¶ 6.)

---

[4] Plaintiff details four documents she did *not* sign: the confidentiality agreement (Montes Decl. ¶¶ 9, 13); the associate handbook acknowledgement (id. at ¶ 10); the production pay acknowledgement (id. at ¶ 11); and English and Spanish versions of Capstone's *former* arbitration agreement (id. at ¶ 12). Plaintiff provides a printout of her personnel file showing each of these documents were viewed on November 14, 2023, but not signed. (ECF No. 26-1 at 45-53.) In her opposition, Plaintiff argues at length about these "onboarding documents." However, these November 2023 documents are not at issue in the instant motion. At issue is the Agreement sent to Plaintiff in January 2024, nearly two months *after* she was rehired by Defendant. That Defendant sent Plaintiff documents in November 2023—which Plaintiff did not sign, and Defendant is not attempting to enforce by way of this motion—is not relevant to whether the Agreement that Plaintiff *did* sign is enforceable. As discussed further herein, the arbitrator is tasked with enforceability. Thus, Plaintiff's argument that certain onboarding documents "should be read together" with the Agreement in terms of unconscionability is an issue reserved for the arbitrator.

Plaintiff also declares was never provided copies of the Agreement nor "informed on how to view, download, or print" documents.  (Id.)  Plaintiff states she was "never informed of" and "would not have agreed to" the provision regarding "Disputes Covered by this Arbitration Agreement" (id. at ¶ 15) and, had the specific provision regarding "Employee's Right to Revoke this Arbitration Agreement" been made known to her, she would have revoked assent to the Agreement (id. at ¶ 17).

Although Plaintiff argues that the Agreement was "only provided to [her] in English," such contention is omitted from her proffered evidence.  In fact, Plaintiff proffers evidence that contradicts this argument. Plaintiff provides a copy of her employee personnel file which reflects that Capstone sent both English and Spanish versions of the Agreement to her email address:

| Agreement Name | Agreement Status | Number of Completed Recipients | Number of Remaining Recipients | Recipient email 1 | | |
|---|---|---|---|---|---|---|
| California Arbitration Agreement - English | COMPLETED | 1 | 0 | REDACTED | | |
| California Arbitration Agreement - Spanish | IN_PROGRESS | 0 | 1 | REDACTED | | |

(ECF No. 26-1 at 44; see also ECF No. 26 at 18.)   Plaintiff argues this evidence "proves Defendant failed to get [Plaintiff's] signature in her own language." (ECF No. 26 at 17.)  This fact is not in dispute.  Defendants only present a copy of the executed Agreement in English. (ECF No. 21-1 at 7-10.)  Plaintiff's evidence, however, evinces that the Spanish version of the Agreement was provided to Plaintiff via email. Although Plaintiff declares that she does not "*believe* [she ]ever had access" to the Agreement; she is not "familiar with using or downloading files" on her computer or email; and she neither knows how nor was ever informed how to download files from Adobe (Montes Decl. ¶ 6), these statements do not contradict—i.e., present a disputed material fact—her own proffered evidence that Capstone provided Plaintiff access to both the English and Spanish versions of the Agreement via email.

Despite this, Plaintiff relies on Rosenthal v. Great Western Financial Securities Corporation, 14 Cal.4th 394 (1996) as a comparable factual predicate to support voiding the Agreement. In Rosenthal, the defendants moved to compel arbitration based upon signed client agreements that contained an arbitration clause. Id. at 403. The plaintiffs argued the agreements were void by way of fraud in the execution because, inter alia, they were not told the client

agreement contained an arbitration clause.  Id.  The California Supreme Court found certain plaintiffs who (1) were led to believe employees worked for a company that the plaintiff had a prior relationship with; (2) were limited in their ability to understand English; and (3) relied upon the employees' deficient oral descriptions of the terms of the agreement had demonstrated "reasonable reliance" on the defendant's misrepresentation.  Id. at 427-28.  On the other hand, the Court found certain plaintiffs failed to establish reasonable reliance because although these plaintiffs also believed the employees worked for a company that the plaintiffs had a prior relationship with, the plaintiffs understood English and claimed that they signed the agreement without reading it because the employees informed them that the agreements were unimportant, and they need not read it.  Id. The Court noted that these statements, "even if falsely and fraudulently made, do not void a written contract, because it is generally unreasonable, in reliance on such assurances, to neglect to read a written agreement before signing it."  Id.

Plaintiff argues that she falls within the first category of Rosenthal plaintiffs because she too (1) is not proficient in English and (2) was "forced" to sign an arbitration agreement she could not read by reliance upon statements made by supervisors and representatives of Capstone that the Agreement was merely a formality to work.[5]  (ECF No. 26 at 23-24.)  The Court is unpersuaded.  In concluding certain plaintiffs' agreements may be void, the Rosenthal court determined that the alleged fraud of the defendant's representatives, if true, "deprived plaintiffs of a reasonable opportunity to learn the character and essential terms of the documents they signed."  Rosenthal, 14 Cal. 4th at 428.  The Court cannot conclude the same here. Even if Capstone's representatives misrepresented that the Agreement "contained essential information required by the company and w[as] necessary for [Plaintiff's] employment and continued work at Capstone" without explaining the contents or legal significance of the Agreement, Plaintiff

---

[5] At this point in her opposition, Plaintiff states that "[d]uring onboarding, Defendant via Adobe required her to sign the English documents, including the arbitration agreement, misrepresented the nature of the documents through its agents (supervisors) so that she did not know what she was signing electronically mush less that she was signing a contract."  (ECF No. 26 at 23.)  Plaintiff then refers the Court to six paragraphs that do not exist in Plaintiff's declaration and other paragraphs that do not clarify the argument. (Id.) It appears Plaintiff is referring to the November 2023 onboarding documentation—including an older version of an arbitration agreement that Defendant is not requesting enforcement—rather than the Agreement at issue.  (See id. at 23-24.)  However, the Court liberally construes Plaintiff's argument as though she is referring to the January 2024 Agreement.

1    "had a reasonable opportunity to learn the character and essential terms" of the Agreement from

2    the Spanish version provided to Plaintiff via email. (Montes Decl. ¶ 8; ECF No. 26-1 at 44); see

3    also Ramos v. Westlake Servs. LLC, 242 Cal. App. 4th 674, 686, 195 Cal. Rptr. 3d 34, 43 (2015)

4    ("No law requires that parties dealing at arm's length have a duty to explain to each other the

5    terms of a written contract.") (quotations and citations omitted).

6        While Plaintiff argues in her opposition that the Agreement "was a necessary requirement

7    for [Plaintiff] to continue working for Capstone" (ECF No. 26 at 17), her declaration tells a

8    different story. Plaintiff declares that "I was also *not* informed that if I didn't sign the agreement,

9    I would lose my job. I believed that I would be terminated if I *did agree* to the agreement."

10   (Montes Decl. ¶ 17 (emphasis added).) Plaintiff fails to explain how her *belief* that she would be

11   terminated if she *did* sign the Agreement or how Defendants' failure to inform Plaintiff she

12   would *not* be terminated if she did *not* sign the Agreement are misrepresentations.[6] To the extent

13   such statements, signed under penalty of perjury, are egregious typographical errors and an

14   unidentified person informed Plaintiff that she would be terminated if she did not sign the

15   Agreement, the Court does not find Plaintiff reasonably relied on such alleged misrepresentation.

16   Plaintiff could have ascertained the truth by exercising reasonable diligence in reviewing the

17   Spanish version of the Agreement sent to her via email.

18       Plaintiff had a reasonable opportunity to know of the character and essential terms of the

19   Agreement in her primary language but unreasonably relied upon a representative's alleged

20   deficient oral recitation of the agreement. Plaintiff's "failure to take measures to learn the

21   contents of the document [she] signed is attributable to [her] own negligence, rather than to fraud

22   on the part of [Defendant]." Rosenthal, 14 Cal. 4th at 431; see also Nguyen v. Barnes & Noble

23   Inc., 763 F.3d 1171, 1179 (9th Cir. 2014) (noting "the failure to read a contract before agreeing

24   to its terms does not relieve a party of its obligations under the contract"). The Court agrees with

25   Defendants that Plaintiff's volitional decision to execute the English version of the Agreement

---

26   [6] Indeed, the Agreement's revocation provision provides that: "[a]rbitration is not a mandatory condition of
27   Employee's employment with Capstone" and that election to revoke assent to the agreement by the employee
     **"SHALL NOT RESULT IN TERMINATION OF EMPLOYMENT OR ANY OTHER AGREEMENT
     BETWEEN THE PARTIES OR ANY FROM OF PENALTY, RETALIATION, OR DISADVANTAGING
28   OF EMPLOYEE BY CAPSTONE."** (ECF No. 21-1 at 9 (emphasis in original).)

1  instead of the Spanish version does not establish a lack of mutual assent.  (ECF No. 31 at 7); see
2  also Dimas v. Costco Wholesale Corp., No. 2:21-cv-02006 TLN JDP, 2023 WL 2999966, at *3
3  (E.D. Cal. Apr. 18, 2023) (granting a motion to compel arbitration where the plaintiff failed to
4  prove fraud in the execution because although he only spoke Spanish and no one informed him a
5  Spanish version of the arbitration agreement was available, the plaintiff "simply chose to sign the
6  English version" while an employee of the defendant provided a "vague description[]" without
7  mentioning "arbitration" or that plaintiff was signing a contract giving up legal rights.).  Plaintiff
8  has failed to meet her burden to show fraud in the execution of the Agreement.  Accordingly, the
9  Court finds Defendants have shown that an arbitration agreement existed between the parties.

10          **C.    Federal Arbitration Act Transportation Worker Exemption**

11          In what is referred to as the transportation worker exemption, 9 U.S.C. § 1 provides that
12  the FAA does not apply to employment contracts of "seamen, railroad employees, or any other
13  class of workers engaged in foreign or interstate commerce."  The Supreme Court articulated a
14  two-step analysis to determine whether a worker qualifies as an exempt transportation worker in
15  Southwest Airlines Co. v. Saxon, 596 U.S. 450 (2022).  First, the court defines the relevant
16  "class of workers" to which the employee belongs.  Id. at 455.  Second, the court determines
17  whether that class of workers is "engaged in foreign or interstate commerce."  Id.  The Supreme
18  Court provided three formulations of the second inquiry: a worker (1) "must at least play a direct
19  and necessary role in the free flow of goods across borders"; (2) must be "actively engaged in
20  transportation of those goods across borders via the channels of foreign or interstate commerce";
21  and (3) may be exempt if she is "intimately involved with the commerce (e.g., transportation) of
22  th[e] cargo[.]"  Ortiz v. Randstad Inhouse Servs., LLC, 95 F.4th 1152, 1159-60 (9th Cir. 2024),
23  cert. denied, 145 S. Ct. 165 (2024) (quoting Saxon, 596 U.S. at 453). While the Saxon Court
24  reserved "provid[ing] a complete definition of 'transportation worker,' " it determined that "one
25  who loads cargo on a plane bound for interstate transit" is a transportation worker.  Id. at 458.

26          The Supreme Court has since clarified that a transportation worker need not actually
27  work in the transportation industry to be exempt from the FAA under Section 1.  Bissonnette v.
28  LePage Bakeries Park St., LLC, 601 U.S. 246, 256 (2024) (finding a lower court erred in

1    concluding drivers who delivered baked goods were not transportation workers because they
2    were in the bakery industry, not the transportation industry).  Relevant here, the Ninth Circuit
3    recently found a warehouse worker who "moved goods only a short distance across the
4    warehouse floor and onto and off of storage racks" within a warehouse where interstate-bound
5    products were received, stored, and processed was a "transportation worker" exempted from the
6    FAA.  Ortiz, 95 F.4th at 1162-63 (noting the worker "fulfilled an admittedly small but
7    nevertheless 'direct and necessary' role in the interstate commerce of products").

8         Plaintiff contends the FAA does not apply to her because she falls within the
9    transportation worker exemption.  Plaintiff first argues that Defendants have effectively admitted
10   Plaintiff is exempt from the FAA because Capstone titled its arbitration agreement, "Arbitration
11   Agreement – Warehouse Employee."  (ECF No. 26 at 11; see ECF No. 21-1 at 7.)  The Court is
12   unpersuaded.  To be sure, following Ortiz, a warehouse worker *may* qualify as a transportation
13   worker.  However, as the Ninth Circuit detailed in Ortiz, such workers are subject to satisfying
14   the two-step inquiry elucidated in Saxon.  Plaintiff fails to proffer any authority to support her
15   argument that the inclusion of "warehouse employee" within the title of an arbitration agreement
16   acts as a talismanic escape hatch to FAA-governed arbitration.

17        Turning to the first step, an employee is a member of a "class of workers" based upon the
18   nature of employee's work, not the nature of the employer's business.  Saxon, 596 U.S. at 453.
19   Thus, Plaintiff's argument that *Defendants* are engaged in interstate commerce because
20   Capstone's website states it employs thousands, operates hundreds of facilities, and manages
21   millions of shipments is unavailing because it does not speak to the nature of the specific work
22   performed by *Plaintiff*.  The focus is instead on what Plaintiff does at Capstone's warehouse.
23   Such determination can be gleaned from the employee's job description.  See, e.g., id. at 456
24   (finding that because the "ramp supervisor" plaintiff's work frequently required that she "load
25   and unload baggage, airmail, and commercial cargo on and off airplanes that travel across the
26   country," she belonged to a class of workers who "physically load[ed] and unload[ed] cargo on
27   and off airplanes on a frequent basis").  Plaintiff, however, makes no attempt to identify her job
28   title nor a non-conclusory description of the nature of her work. Plaintiff argues generally,

without any factual support, that she "performed an essential function of shipping Defendants' products from its Warehouse and throughout the country" and "played a vital role in the receiving and shipping of Defendants' goods and products." (ECF No. 26 at 11.) Plaintiff's declaration does not fare better: Plaintiff "worked at the Warehouse for Defendants" where she was "involved in the receiving and shipping of Capstone's goods and products…across state lines as [she] understood based on the labels and marking on boxes and other locations. [She] was also informed that the products and goods crossed state lines." (Montes Decl. ¶ 5.) While Plaintiff parrots Saxon's general rule that she "was of a class of workers that engaged in foreign or interstate commerce" in her opposition, she makes no factual proffer supporting such contention. Compare (ECF Nos. 26-1, 26-2), with Ortiz 95 F.4th at 1161 (defining the plaintiff's class of worker by his undisputed description of duties as an "equipment operator": one who engages in "picking up the packages and transporting them to warehouse racks to organize them"; "transport[ing] the packages to the picking section of the warehouse"; "assisting Pickers in obtaining packages so they could be shipped out"; and "assist[ing] the Outflow Department to prepare packages to leave the warehouse for their final destination"), and Shanley, 2025 WL 19012, at *5 (finding plaintiff "belonged to a class of workers that handled and prepared perishable products for shipment" based upon plaintiff's proffered job discretion of his position as "order selector" in the defendant's warehouse).

The Court notes Plaintiff's signed arbitration agreement and personnel file reflect that Plaintiff held the job title of clerk. (ECF Nos. 21-1 at 10; 26-1 at 42.) For its part, Defendant provides undisputed evidence that as a clerk, Plaintiff's job description included providing administrative and clerical support; performing data entry; maintaining office files; preparing and making bank deposits; monitoring to assure paperwork is properly completed; organizing documents and preparing shipments to be sent to Capstone's corporate office; taking packages to FedEx "as needed";[7] and receiving and distributing mail and packages. (Declaration of Beth

---

[7] There is no evidence these shipments to Defendant's corporate office or the as-necessary delivery of packages to FedEx included the shipment of *goods*, nonetheless that such shipments would qualify as "interstate commerce" that "is still in progress." Saxon, 596 U.S. at 458; see also Ortiz, 95 F.4th at 1159 ("an employee's relationship to the movement of goods must be sufficiently close enough to conclude that his work plays a tangible and meaningful role in their progress through the channels of interstate commerce.").

1   Shonek, ECF No. 31-1 at ¶¶ 3-4; ECF Nos. 31-2, 31-3.) Defendant's uncontroverted evidence

2   reflects that the specific nature of Plaintiff's work within the warehouse involved the

3   performance of clerical duties without a "direct and necessary role," "active engagement" in, or

4   "intimate involvement with" the movement of goods through the channels of interstate

5   commerce. See Ortiz, 95 F.4th at 1159; see also Villasenor v. Dollar Tree Distrib. Inc., No.

6   EDCV 24-987-KK-DTBX, 2024 WL 4452853, at *4 (C.D. Cal. Aug. 6, 2024) (finding a

7   warehouse distribution center employee "had no relationship to the movement of goods in

8   interstate commerce" where her role included staffing the front desk, paying bills, assisting with

9   event preparation, answering the phone, and ordering shipping supplies every other week).

10      Plaintiff, as the party resisting arbitration under transportation worker exemption "bear[s]

11  the burden of proving that [the] exemption applies." Shanley, 2025 WL 19012, at *4 (quoting

12  Rogers v. Lyft, Inc., 452 F. Supp. 3d 904, 913 (N.D. Cal. 2020)). Plaintiff has not met her

13  burden. Because the Court finds Plaintiff did not belong to a class of workers directly involved in

14  transporting goods across state or international borders, the FAA's transportation worker

15  exemption does not apply. Accordingly, the Agreement is governed by the FAA.

16      **D.    Arbitrability**

17      "Generally, in deciding whether to compel arbitration, a court must determine two

18  'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2)

19  whether the agreement covers the dispute." Brennan v. Opus Bank, 796 F.3d 1125, 1130 (9th

20  Cir. 2015) (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002)). "However,

21  these gateway issues can be expressly delegated to the arbitrator where 'the parties *clearly and*

22  *unmistakably* provide otherwise.' " Id. (emphasis in original) (quoting AT&T Techs., Inc. v.

23  Commc'n Workers of Am., 475 U.S. 643, 649 (1986)). "Because a court must enforce an

24  agreement that...clearly and unmistakably delegates arbitrability questions to the arbitrator, the

25  only remaining question is whether the particular agreement *to delegate* arbitrability...is itself

26  unconscionable [or otherwise defective]." Brennan, 796 F.3d at 1132 (citing Rent-A-Center, W.,

27  Inc. v. Jackson, 561 U.S. 63, 68–70 (2010)) (emphasis in original). Where the non-moving party

28  fails to "make any arguments specific to the delegation clause" and instead argues that the

arbitration agreement "*as a whole* is unconscionable," courts need not consider such claim because it is one "for the arbitrator to decide in light of the parties' 'clear and unmistakable' delegation of that question." Id. at 1133 (quoting Rent-A-Center, 561 U.S. at 73-75); see also Caremark, LLC v. Chickasaw Nation, 43 F.4th 1021, 1030 (9th Cir. 2022) ("[I]f the parties [formed] an agreement to arbitrate containing an enforceable delegation clause, all arguments going to the scope or enforceability of the arbitration provision are for the arbitrator to decide in the first instance.").

Here, the Agreement contains a delegation provision that states, in pertinent part: "[a]n arbitrator shall decide all issues, arising out of or relating to the interpretation or application of this Arbitration Agreement, including the arbitrability, enforcement, revocability or validity of this Arbitration Agreement or any portion of it, except the issue of the availability of class….or representative arbitration of claims, which issue shall be reserved." (ECF No. 21-1 at 8.) This provision clearly and unmistakably delegates all issues—except the issue of availability of class and representative claims—related to the Agreement to the arbitrator.

Additionally, the Agreement incorporates the AAA rules: "The arbitration must be conducted in accordance with the procedure described in this Arbitration Agreement and the Employment Arbitration Rules (and related arbitration rules governing requests for preliminary or other injunctive relief) of the AAA, copies of which are available online at www.adr.org." (ECF No. 21-1 at 7.) Such rules also confer power to the arbitrator to decide issues of arbitrability. (ECF No. 21 at 17); see Brennan, 796 F.3d at 1130 (finding the parties; incorporation of AAA rules in an arbitration agreement within an at-will employment contract constituted clear and unmistakable evidence of the parties' intent to submit the arbitrability dispute to arbitration). Thus, the Court finds the parties have agreed that whether Plaintiff's dispute should be arbitrated has been delegated to the arbitrator.

With this, the Court is restricted to considering only those arguments specific to the delegation provision. See Brennan, 796 F.3d at 1133; Rent-A-Center, 561 U.S. at 74. Although Plaintiff argues the Agreement as a whole and various other provisions within are unconscionable, Plaintiff does not reference, nonetheless specifically challenge, the delegation

1   provision in the Agreement. See Bielski v. Coinbase, Inc., 87 F.4th 1003, 1011 (9th Cir. 2023)

2   (holding "that to sufficiently challenge a delegation provision, the party resisting arbitration must

3   specifically reference the delegation provision and make arguments challenging it."). Plaintiff

4   therefore has not challenged the delegation provision of the Agreement that clearly and

5   unmistakably gives the arbitrator the exclusive authority to rule on Plaintiff's remaining defenses

6   to enforcement of the Agreement.  Thus, the arbitrator, not this Court, shall determine Plaintiff's

7   defense of procedural and substantive unconscionability.

8        In short, the Court finds Plaintiff entered into an enforceable arbitration agreement

9   governed by the FAA, which includes an unchallenged provision delegating arbitrability to the

10  arbitrator.  Accordingly, the Court recommends that Defendant's motion be granted with respect

11  to arbitration of Plaintiff's individual claims.

12        **E.    Plaintiff's Representative PAGA Claims**

13        It is undisputed that Plaintiff's representative PAGA claims are not subject to the

14  Agreement. (See ECF No. 21 at 20.) Defendants request that these claims be stayed while

15  Plaintiff's individual PAGA claim is arbitrated.  (ECF No. 26.)  Plaintiff correctly argues at great

16  length that a stay is not required, and she currently has standing to litigate the representative

17  PAGA claims in this action.  (ECF No. 26 at 29-32); see Adolph v. Uber Techs., Inc., 14 Cal. 5th

18  1104 (2023) ("where a plaintiff has filed a PAGA action comprised of individual and non-

19  individual claims, an order compelling arbitration of individual claims does not strip the plaintiff

20  of standing to litigate non-individual claims in court.").  Plaintiff, however, fails to proffer any

21  reason why this Court should exercise its discretion and proceed with the representative PAGA

22  action while the parties contemporaneously arbitrate Plaintiff's individual PAGA claims.

23  Defendants validly argue that staying the representative claims benefits Defendants and the

24  Court by not expending resources in a case an arbitrator may determine Plaintiff ultimately lacks

25  standing to pursue.  (ECF No. 31 at 10.)  The Court agrees.

26        Given the arbitration of Plaintiff's individual PAGA claims may impact Plaintiff's

27  standing as a PAGA representative, the Court finds a stay would promote judicial economy.

28  Accordingly, the Court recommends staying Plaintiff's representative PAGA claims pending the

1  outcome of her individual PAGA claims in arbitration.

2       **F.     Dismissal and Class Waiver**

3       Defendant's motion first seeks dismissal of all individual claims in the FAC.  (ECF No.

4  21 at 28.)  Although Plaintiff generally requests the Court deny Defendant's motion to dismiss

5  the first amended complaint (ECF No. 26 at 32), Plaintiff fails to affirmatively request that the

6  action be stayed as to her individual claims pending arbitration. See Smith v. Spizzirri, 601 U.S.

7  472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a

8  party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the

9  proceeding."). Given the Court's recommendation that the representative PAGA claims be

10 stayed and this Court's supervisory role envisioned by the FAA, the Court shall recommend that

11 Plaintiff's individual claims be stayed rather than dismissed.

12      Defendant also requests that Plaintiff's class claims be dismissed as the Agreement is

13 governed by a class waiver provision.  "An arbitration agreement may contain an enforceable

14 waiver that waives the right to initiate or participate in a class action."  Prostek v. Lincare Inc.,

15 662 F. Supp. 3d 1100, 1122 (E.D. Cal. 2023) (citing AT&T Mobility v. Concepion, 563 U.S.

16 333, 351 (2011)); Villasenor, 2024 WL 4452853, at *6 (enforcing arbitration agreement's class

17 action waiver and dismissing class claims).  Here, the Agreement includes a provision entitled

18 "This Arbitration Agreement Waives Class…Actions."  (ECF No. 21-1 at 8.)  The provision

19 states, in pertinent part, that "**THE PARTIES AGREE THAT NO CLASS…ARBITRATION**

20 **OF CLAIMS SHALL BE ALLOWED AND THAT THE ARBITRATOR IS NOT**

21 **EMPOWERED TO CERTIFY, CONDUCT, OR AWARD RELIEF IN SUCH**

22 **ARBITRATION.**" (Id. (emphasis in original).)  Such provision requires that all covered claims

23 be arbitrated on an individual basis.  Defendants therefore request that the class waiver be

24 enforced, and Plaintiff's class claims under California's Labor Code and Business and

25 Professions Code be dismissed. Other than arguing the Agreement as a whole is unconscionable,

26 Plaintiff does not address Defendants' request to enforce the class waiver, nor does she argue

27 that the waiver is unenforceable. Accordingly, the Court recommends giving effect to the

28 Agreement's class waiver provision and dismissing Plaintiff's putative class claims.

**IV.**

**ORDER AND RECOMMENDATION**

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1.      Defendant's motion to compel arbitration (ECF No. 21) be GRANTED and that Plaintiff's individual claims be compelled to arbitration pursuant to the parties' arbitration agreement;

2.      Plaintiff's putative class claims be DISMISSED without prejudice; and

3.      Plaintiff's individual claims and representative PAGA claims be STAYED pending arbitration.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within **fourteen (14) days** of service of these recommendations, the parties may file written objections to the findings and recommendations with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The District Judge will review the Magistrate Judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS FURTHER ORDERED that the Clerk of the Court is DIRECTED to randomly assign this matter to a District Judge.

IT IS SO ORDERED.

Dated:   **September 2, 2025**

STANLEY A. BOONE
United States Magistrate Judge

21